San Francisco, California I'll wait till you all get settled. The case is Appeal 17-2402 Haywood et al. v. Massage Envy Franchising. Thank you, Your Honor. May it please the Court. My name is Amit Vora, and I represent the appellants. At issue is whether the District Court erred when it dismissed Holt and Haywood's complaint with prejudice. Holt and Haywood alleged that Massage Envy had deceived them into expecting 60-minute massages, but that they received 50-minute massages. Mr. Vora, you have a wonderful voice, but could it be just a little louder? Sorry. Yes, Your Honor. I apologize. The District Court reasoned that Holt and Haywood had failed to plead the damage element of the MMPA and the ICFA, respectively, because they had failed to allege out-of-pocket loss, but that reasoning contravenes the benefit of the bargain rule, which controls here. Under that rule, if the plaintiff has alleged that the value of the product received is less than the value of the product promised, then she has sufficiently pleaded damage. Who caused the damages? The franchisor or the independent franchisees? Massage Envy, the franchisor, caused the damage because Massage Envy created the expectation in Holt and Haywood that they would be receiving a 60-minute massage. But what control does the franchisor have over the franchisee regarding how the services are provided? Is there anything in the franchise agreement, for instance, requiring that all franchisees conduct massage sessions the same way? Like, could a franchisee decide that the one-hour massage means a full hour of hands-on time? Could it decide that it means 45 minutes of hands-on time? In other words, what I'm trying to get to is why should the franchisor be held liable for the decisions of franchisees? I would suspect, and you can help me, that the website contains all kinds of disclaimers about how services vary by franchisee. Actually, Your Honor, the website leads the consumer to believe that he or she will be receiving a one-hour massage, and there is no disclaimer except for one, which is very difficult to find, indicating that the 60-minute massage would be a 50-minute massage. In addition, Massage Envy's business practice was to pawn off these 50-minute massages as 60-minute massages, and that was a standardized business practice applied to all of its franchisees. Well, now, where did the plaintiffs allege that they relied on the misleading statements on the website in making their purchases? And I'm not talking about buying a massage from Massage Envy versus a competitor. I am talking about inducing them to buy from Massage Envy, period. Where in the complaint are those allegations? For Holt, Your Honor, those allegations appear in several places. At paragraph 131, it says, Holt accessed Massage Envy's website to research prices for a one-hour massage. For Haywood, at paragraph 123, the complaint says, Haywood went on Massage Envy's website to read about the one-hour massage, nor did she read that the massage would actually be less than an hour. Also, Your Honor, recall that reliance and inducement are not requirements under the MMPA and the ICFA. These statutes are intended to provide more protection than the common law. These are broad remedial measures. And here, Your Honor, it's important to remember that the benefit of the bargain rule controls, and so if the value of the product promised is greater than the value of the product received, then the plaintiff has surmounted the pleading threshold for damage. See, my problem is that the plaintiffs do not seem to ever come to terms with the distinction between the franchisor that made the misleading service and the franchisee that provided the disappointing service. They sued only the franchisor. What injury did the franchisor cause? Or to put it another way, when exactly were the plaintiffs injured? When they made the purchase? When the massage was delivered? When? When their expectation went unfulfilled. Massage Envy created an expectation. I don't know what that means. I do not know what that means. When they received a 50-minute massage, which did not fulfill their expectation. Okay, so who did that? The franchisor? But that was in conformity with Massage Envy, the franchisor's business practice. So Massage Envy, as the franchisor, has prominently advertised on its homepage that its customers will receive a one-hour massage. There's no disclosure there that the customers will receive a 50-minute massage plus consultation dressing. Throughout its website, it advertises and promotes one-hour massages and one-hour massage sessions, and it leads its consumers to believe that they will be getting a full one-hour massage while the consultation and dressing are separate activities extraneous to the massage that don't count against that hour. Holt and Haywood were left with that expectation. That expectation went unfulfilled, and that's why Massage Envy has caused their damage. And Illinois law recognizes, does it not, claims under this statutory scheme against franchisors, auto manufacturers, for example, for cars purchased from a dealer? Yes, Your Honor. That's the Connick case. Right. So there isn't the privity requirement. Precisely, Your Honor. There is no privity requirement here, which also militates in favor of holding Massage Envy, the franchisor, on the hook. And also this website, in one particular place, which is alleged in the complaint, provides an enumeration of the steps that a customer would take upon entering a Massage Envy parlor. And on this page, Massage Envy indicates that the first step is the meet and greet, which is described as the consultation. The second step is your massage, which is described as the 60-minute massage. And the third step is the dressing portion. So Massage Envy itself is differentiating between these three phases of the Massage Envy experience. And a consumer, including Holt and Haywood, would infer that she was about to receive a 60-minute massage, not a 50-minute massage, plus consultation and dressing. A consumer, in other words, would infer that she would receive a 60-minute massage and that the consultation and dressing wouldn't count against that hour. Now, it's also important to remember, Your Honor, that under the benefit of the bargain rule, if a plaintiff alleges the difference between the value of the product received and the value of the product promised, that is sufficient to plead damage. And here, Holt and Haywood have satisfied that sufficient condition. So the damage inquiry ends. And that's where the district court went wrong. In effect— You know, the complaint goes on for 70 pages. Yes, Your Honor. I mean, God, so much for a short and plain statement of the claim showing that a pleader is entitled to relief. But, Your Honor, that underscores— Before you get around to the plain of allegations— But, Your Honor, those preliminaries— It was nearly impossible to parse out the actual complaint here. But, Your Honor, those preliminaries are necessary to show that it was Massage Envy, the franchisor's business practice to pawn off 50-minute massages as 60-minute massages. And to focus on the district court's error, the district court and Massage Envy are, in effect, grafting a necessary condition onto the benefit of the bargain rule that's in congress with the rule. They're, in effect, saying something like, to show damage, the plaintiff must have suffered out-of-pocket loss. But there's a different rule that trains its focus on out-of-pocket loss. That's the out-of-pocket loss rule. Under the benefit of the bargain rule, all that matters is the plaintiff has alleged a difference between the value of the product promised and the value of the product received. So, ultimately, the district court and Massage Envy are swearing fealty to the benefit of the bargain rule while finding a rearguard action against its applicability here. That's the mistake that the district court made. Well, you know, plaintiffs argue that all that's needed to allege proximate cause is that after a misstatement is made, the charges were paid. Doesn't that remove any element of materiality of the misstatement? Does the purchaser not have to assert that she was induced by the misstatement to make the purchase? That the misstatement was material to the decision to buy. Why do plaintiffs not have to allege they would not have bought the massage at this price if they'd known it was 15 minutes rather than 60? Boy. Because under the MMPA and the ICFA, plaintiffs are not required to make that allegation. These statutes were designed to make it easier on plaintiffs to bring these sorts of claims. Your Honor, one decision that might be instructive, especially on the district court's error, is the Kraft case, which is from Missouri. And allow me to just read a line from that case, which articulates the principle that controls here. An important aspect of the benefit of the bargain rule that is sometimes not clearly understood is that a defrauded party may recover damages even if the property that he or she received, while not as represented, equals or exceeds in value the price paid. The value or amount of consideration paid by the plaintiff normally is immaterial and cannot affect the amount of recovery. Well, you know, Missouri law seems to require a purchase from the defendant. Was there a purchase from the defendant? It seems the purchase was from the franchisee, not the defendant franchisor. There's no privity requirement, so the purchase need not be between the plaintiff and the defendant. But there needs to be trade or commerce, and there needs to be a purchase, and that did occur here. Are you arguing that you could fix the problems with the complaint by repleting? Because if some of the problems cannot be fixed with repleting, what would be the harm of dismissing with prejudice? Could the plaintiffs plead in good faith, for example, that they saw the misstatements on the website and relied on them in making the purchases, or could they plead that the franchisees adopted those misstatements somehow, you know, through the franchise agreement, for example? Well, Your Honor, the complaint is not deficient insofar as the complaint does not allege reliance, because reliance is not required under the MMP and ICFA. But to the extent that Your Honor sees deficiencies in the complaint, yes, a repleting could cure them. In other words, the district court dismissed this complaint with prejudice because the district court thought that the out-of-pocket loss control, but the out-of-pocket loss rule does not control. So a dismissal with prejudice doesn't make sense in a world where the benefit of the bargain rule controls, which is this rule. Is there any rebuttal time now? Yes, I would like to reserve the rest of my time for rebuttal. Here we are. Thank you. Thank you. Okay. Thank you, Mr. Senate. I'm sorry. Mr. Fora, sorry. May it please the Court. I'm Lou Anne Sachs of Sachs, Ricketts & Case, and I'm here on behalf of the Apelli Massage Envy Franchising, LLC, which I will refer to as MEF throughout the course of my presentation. You're lucky Judge Easterbrook isn't here. Maybe Massage Envy. Yeah, maybe you want to say Massage Envy. Your Honors, the Court appropriately granted dismissal here, and there are three fundamental flaws that immediately support that notion. The first is, as the Court has already acknowledged, what did the plaintiffs see that was untrue that was stated by Massage Envy Franchising, MEF? They never tell us, Your Honor. Counsel pointed you to specific paragraphs in the amended complaint when you asked exactly that question, but a careful review of those paragraphs does not tell us what Ms. Haywood or what Ms. Holt saw and read. They just say that they went to the website. As we can see from that voluminous pleading that you've mentioned, there are many, many pages taken from the website from various iterations of the website over years. Some of them are from 2007, some from 2011, some from 2012, some from 2016, some from after this lawsuit started. They conflate them all together and expect you to parse through and try to figure out what these appellees saw. Starting right there, since they have not identified, as they are required to do, both under Rule 9B and specifically with the requirements of ICFA and MMPA, we are talking about a statement that was untrue that caused them, proximately caused them. We are not talking about reliance. We are talking about causation, which is an element of both ICFA and the MMPA. And the court did not dismiss with prejudice simply because he applied the out-of-pocket loss rule. The district court concluded that the plaintiffs had not pled a specific untrue statement, that their alleged injuries, to the extent there were any, were caused by MEF, and, in fact, he concluded they did not satisfy an actual injury. Counsel has leapt over many, many hurdles prior. The misrepresentation or the deception exists in the offering of a one-hour massage that actually is 50 minutes. Neither one of the plaintiffs ever specifically pleads, if I may get a drink of water, pardon me. My apologies. Neither of the plaintiffs actually says that she saw that statement on the website. They are very, very acute in how they've pled this complaint. They say consumers would see that. But despite all of the allegations of the complaint, if you refer specifically to the paragraphs starting at 131 for Leah Holt, it only goes to 134. All she says is that she accessed the website to research the prices for a one-hour massage. But, notably, she doesn't tell us what she saw when she accessed that. Why is that required for notice pleading, even under the heightened standard of 9B? Because they have pled fraud. And so they have to tell us what the what is. Then they have to tell us not only who made that, arguably. The what is the one-hour massage that's only 50 minutes. And then you can take a deposition and find out more. But at the pleading stage. Pardon me. When you combine that fact that they haven't told us among all of those pages of the website what they saw, they then admit that they never purchased anything from Massage NB Franchising, LLC. They never paid a cent. That doesn't matter under Illinois law or Missouri law. Well, they have to show that they suffered an injury that was causally related by MEF. Right. And that's where the lack of the link is. They didn't get the benefit of the bargain. That's the injury. Well, there's nothing in the complaint, Your Honor, that actually says that they bargained with MEF. That's why they have to specify what they said. That's not necessary. That's not necessary under Illinois or Missouri law. To go to the question of benefit of the bargain, which is a measure of damages, it's how we figure out how much we compute your damages to be. They first have to show that they suffered an actual injury that was causally related to the challenged conduct. They didn't get the benefit of the bargain. They didn't get a one-hour massage. But the benefit of the bargain is the measure. It's not the actual loss. Let's look and see what they allege they did lose. Let's separate it out this way. Ms. Haywood. Ms. Haywood did not go to the O'Fallon Spa and obtain a massage because of what MEF allegedly said on its website. She went there because her daughter handed her a $75 gift card. Privity is not required. I understand privity is not required, Your Honor, but it was not the causation. She would have been going to a Massage Envy independently owned and operated spa and redeeming that gift card somewhere. She didn't have the option of redeeming it at Bloomingdale's or at Massage Lux, the local competitor that she talks about in her complaint. She had $75 in order to get services or products. She could have redeemed them for anything. You can't get to the but for, and but for is required under ICFA. It's not but for Massage Envy statement that she walked into that door. It's but for her daughter handing her that massage. So then on top of that, here when you look at the cases, particularly under the MMPA that counsel has cited that talk about benefit of the bargain, and Your Honor, you mentioned manufacturers and you mentioned wholesalers in the automobile industry. What's notable about that, Your Honor, is that in each of those upstream circumstances, there was first a sale by the manufacturer, for instance, to the distributor or the retailer. In the wholesaler card case, there was a sale by the wholesaler to the retail, the dealer. Massage Envy Franchising didn't sell anything to this franchising, and there's no allegation here that Massage Envy Franchising profited in any way as a result of the fact that she got a gift card. That misunderstands how franchising works. Pardon me? The franchisor provides all the marketing. Actually, there are cooperative – And this, again, gets beyond what is appropriate to argue at the pleading stage. It does, but I'm talking about the absence of an allegation in the complaint. When you look at these cases in which – They don't have to make that allegation to survive a motion to dismiss, even under the heightened pleading standards. This is not having to do with the heightened pleading standards, Your Honor. We know what the misrepresentation was, an hour massage that turns out to be 50 minutes. That's the what. And we have the timing, we have the location, we have everything we need under 9B as required by Illinois and Missouri law. You're asking for far more than the statutory claim requires. Your Honor, if I can come back for one more moment to what we have about the misrepresentation, because I do want to respond to that point. But we were talking about the point Your Honor raised earlier to appellant's counsel as to when you can go the step out of the actual purchase chain. When can you go to a third party who isn't the person who received the direct fund with whom was not negotiating the purchase? And Your Honor mentioned manufacturers and you mentioned wholesalers. There's a very big difference here between a franchisor who does not sell massages, who only receives a royalty. So in this instance, what plaintiffs have not pled, but which was a critical factor in the cases that they rely upon for arguing that you can go the in connection with goes beyond the purchase, is in each of those instances there was an allegation that the wholesaler or the manufacturer itself received some additional profit as a consequence of the challenged activity. So in other words, had plaintiffs pled here that because the plaintiffs only received a 15-minute massage, MEF itself made more money, they might get themselves into the position of those wholesalers and of those manufacturers. But here there is no allegation of profits to MEF as a result of this challenged conduct at all. You're focusing on the wrong thing.  I understand that, Your Honor. And you're the marketer. Your client is the marketer, supplies all the marketing for the local franchises. Actually, we don't supply all the marketing for the local franchises, but that goes outside the allegations. But that's a permissible inference from this pleading. You can litigate that at the summary judgment stage. Your client provides all the marketing. All these state statutory consumer fraud claims focus on deceptive marketing practices. And your rule, if the rule that you're proposing would eliminate liability for a huge swath of the retail sector that operates using this model. Your Honor, to go back for a moment to the misrepresentation issue that I said I would come back to. And this is extremely important because under the Davis decision, under the Bober decision, under some more recent Seventh Circuit decisions since we filed our opposition papers, if someone is alleging that there is a deceptive statement, you have to look at the totality of the circumstances. So let's look at the totality of the circumstances in the context of MEF's website. Okay. You're really not grappling with my question. I apologize. You've moved on to something else. Okay. I apologize. The rule that you're proposing would, again, eliminate liability for an enormous swath of the retail sector. To repeat what I just said, you're asking for all franchisors to be absolved from any liability under, or to never face any liability for deceptive advertising because the purchases are made at a local franchise. No, Your Honor. Let me give you an analogy to try to put that in context. If I'm McDonald's and I'm a franchisor and I put out an ad that says, our french fries cure cancer, and somebody with cancer walks into one of the franchise locations and buys french fries and it shows that they don't prove cancer, McDonald's may very well, and the person who went in and bought those fries had seen that ad before going in and purchasing. That was the reason they walked into McDonald's. They may well have a claim against McDonald's, but those aren't our facts here. Neither of these plaintiffs pled that they saw the statement on Massage and Defranchising's website about a 60-minute massage. They're pleading that they saw the websites. A whole bunch of screenshots are provided in this pleading, and the screenshots show one-hour massage, and they didn't get that. But, Your Honor, the flaw in the complaint is they could have very easily said, and this is the page that she saw. They could have at least even said she saw. They don't need to do that to survive a motion to dismiss. You can ask that in a deposition and litigate it on summary judgment. But on Rule 9b, you do. If I may, though. I think you're asking too much. The totality of the circumstances has got to be considered here when we're talking about a deceptive statement. The Davis case, the Bobor case, the more recent Tolan decision that just came out in December of 2017, all say that when you're talking about a deceptive statement, you have to look at everything. You have to look at everything that was known or could have been known by the consumer. Here, what did Ms. Haywood know? Before she went on the Massage Envy Franchising website and saw whatever she saw, we don't know, she received a gift card notification. And the gift card notification told her that it was good for $75. It didn't say anything about the temporal duration of any service she could get except that any session she obtained would include time for consultation and dressing. When she went on that website that we've talked about, again, not knowing what she saw, she could have seen, if she wanted to know, what was going to happen in her massage, a statement that explicitly told her. A one-hour massage includes 50 minutes of hands-on service and 10 minutes of consultation service. It was right there, Your Honor. So to take the step that we're going to allow her to not identify what she did see but ignore what was there for her to see and that would have fully informed her runs afoul of Seventh Circuit rulings. Now, when we sit down and we talk about the... What did it take to reach that qualifier? It took moving through two different links. That's all. That's a fact question, whether that's deceptive or not. Well, why don't we find out if she actually, or we should have found out from her complaint, if she actually saw that. One of the other things that plaintiffs... That's what discovery is for. One of the other things that plaintiff... I'm sorry, that the appellant's counsel talked about when he stepped up here was 60 minutes, that they walked in with the expectation of 60 minutes. I just want to make certain that it's clear to the panel. The Massage and Refranchising website and the signage, as you'll see if you go through every one of those pages of the complaint, never use the word, never use the phrase 60 minutes until after this lawsuit started, long after they got their services, and then that 60 minutes was immediately explained, that it included 50 minutes of hands-on service and 10 minutes of consultation and dressing. Plaintiff tries to take this notion that they expected 60 minutes from nothing that was said by Massage and Refranchising. But we have to also step back one second and say, in what way did they sustain an economic loss, a loss that is pecuniary in nature? They never plead that. And, Your Honour, that is a massive defect in their complaint. They don't tell any of us how much either one of these plaintiffs spent, whether it's through the redemption of a gift card or whether it's through the actual provision of cash for their services. We could try to infer from the complaint that they probably paid $50 because that was the advertised introductory price. But even if they paid $50 for it, they had no lost opportunity. They couldn't go out in the market based on their own allegations and get a 50-minute service for less than that. And, in fact, Ms. Haywood went back and she paid $90 for a 50-minute massage. You're getting more than what you're entitled to in terms of... I would argue that she received a windfall here. Oh, I apologize. Thank you very much. Thank you very much. Okay, let's see how much time Mr. Flora has left. You have 2 minutes and 54 seconds. Your Honors, allow me to correct a few misrepresentations that were made. First, there's only one disclosure on Massage Envy's entire website that indicates a 60-minute massage is actually a 50-minute massage. But that disclosure does not take only two steps. It's almost impossible to find. We've outlined the steps in our complaint, in our briefing. I haven't been able to memorize them. It would take too long to go through them. But one of the steps involves clicking on a camouflaged link, which means clicking on text that is hyperlinked but that does not signal that it is a hyperlinked text. Second, Your Honor, there is no requirement for privity and there is no requirement for reliance. We rest in our briefing to establish those propositions. And third, Your Honor, about the point that was just made regarding a windfall. Remember that under the benefit of the bargain rule, damage can be pleaded in the form of the difference between the value of the product promised and the value of the product received. And if there's a difference there, the plaintiff's consideration does not matter. So even if the price that the plaintiff paid for the product is less than the value of the product received, meaning that the plaintiff has suffered no out-of-pocket loss, the plaintiff still has suffered damage. And we have binding authority for that. Take Drew. This is an Illinois Supreme Court case. There, the plaintiff traded a home for 80 acres and $800. The defendant represented that the 80 acres had timber. It turned out that the 80 acres had no timber. The defendant, though, argued that the plaintiff had no claim because the home itself was worth $800. But the Illinois Supreme Court rejected that argument. The Illinois Supreme Court said that the plaintiff was entitled to the benefit of his bargain, which was the difference between the value of the promised land and the value of the land as represented. And plaintiff's consideration was immaterial to that analysis. So, Your Honor, the windfall argument doesn't fly here. Under the benefit of the bargain rule, all that matters is that there is an alleged difference between the value of the product promised and the value of the product received. Complaints that survived motions to dismiss or the differences between those two values were much smaller, much less ascertainable, much less quantifiable than the difference here. The difference here between a 60-minute massage and a 50-minute massage is clear and easily monetizable. Your Honor, it's also important to remember that the district court tried to shoehorn this case into the false discount line. Our briefing explains why that was inappropriate and why the false discount line harmonizes with the benefit of the bargain rule. This case is tailor-made for the benefit of the bargain rule. The archetypical case for the benefit of the bargain rule, as the Giammanco Court describes, is one where the defendant misrepresents a feature or a quality of the product. That's what happened here. Thank you, Your Honor. Thank you. All right. Thanks to everyone. And the case will be taken under advisement.